**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| MARIO ANDJUAN PEEPLES, | : | |
| Plaintiff, | : | |
| vs. | : | CA 19-0070-JB-C |
| XLIBRIS PUBLISHING, | : | |
| Defendant. | | |

**REPORT AND RECOMMENDATION**

This action is before the Court on Plaintiff's amended *pro se* complaint (Doc. 5) and amended motion to proceed without prepayment of fees and costs (Doc. 6). This matter has been referred to the undersigned for pretrial disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(a)(2)(S). Upon consideration of all relevant pleadings filed in this case, it is recommended that this Court **DENY** Plaintiff's amended motion to proceed without prepayment of fees (Doc. 6) and it is further recommended that this action be **DISMISSED WITHOUT PREJUDICE**, prior to service of process, both because Plaintiff has failed to establish that diversity jurisdiction exists and because he has failed to state a claim for copyright infringement, *see* 28 U.S.C. § 1915(e)(2)(B)(ii) (recognizing that a complaint may be dismissed for failure to state a claim upon which relief may be granted).

**I. PLAINTIFF'S AMENDED MOTION TO PROCEED WITHOUT PREPAYMENT OF FEES (Doc. 6).**

By previous order entered on February 22, 2019, the undersigned denied Plaintiff's IFP motion filed on February 19, 2019 (Doc. 4; *see also* Doc. 2 (IFP motion)). That Order explained at some length the deficiencies in Plaintiff's first IFP motion (*see* Doc. 4, at 5-

7). In particular, in his initial motion, Plaintiff indicated that he provided for his basic living needs (food, clothing, shelter, etc.) with his SSI monies/benefits and ""loans" (Doc. 2, at 3), prompting the undersigned to parenthetically note that it appeared Plaintiff had received "loans" from family members because he listed no financial debts or obligations and the entirety of his SSI monies (of $771.00 monthly) would "'go' to the payment of rent and utilities (Doc. 4, at 6 n.5). Moreover, the undersigned informed Plaintiff that if he subsequently identified in a new IFP motion "that he receives loans from a family member or family members, . . . the Court would then be in the position of having to consider the ability of Plaintiff's parents, adult siblings, or other next friends to pay the filing fee and other related costs without being deprived of the basic necessities of life." (Doc. 4, at 6 (citations omitted)).

When Plaintiff filed his "new" motion to proceed without prepayment of fees on March 11, 2019 (Doc. 6), he indicated his address as 7403 Saybrook Blvd., Mobile, Alabama 36619 (*id.* at 1 & 4), that he pays monthly rent of either $600 or $800 (*id.* at 3), that he has no assets, no monies in any bank and no savings or investment income (*id.* at 2-3), that he receives a monthly SSI check totaling $771.00 (*id.* at 3), and that he has absolutely no financial debts or obligations (*id.*). Finally, Plaintiff "adds" that he does "not know anyone willing to help with expenses and legal matters at the time." (*Id.*)

The undersigned again recognizes that the authority for granting a plaintiff permission to proceed without prepayment of fees and costs is found at 28 U.S.C. § 1915:

> (a)(1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state

the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1); *see Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (affirming the application of § 1915's provisions to a non-prisoner's complaint).

"The *in forma pauperis* statute, 28 U.S.C. § 1915, ensures that indigent persons will have equal access to the judicial system." *Attwood v. Singletary*, 105 F.3d 610, 612-613 (11th Cir. 1997), citing *Coppedge v. United States*, 369 U.S. 438, 446, 82 S.Ct. 917, 921-922, 8 L.Ed.2d 21 (1962). The opportunity to proceed as an indigent in civil cases, created by statute, is not considered a right but a privilege, *Rivera v. Allin*, 144 F.3d 719, 724 (11th Cir.), *cert. dismissed*, 524 U.S. 978, 119 S.Ct. 27, 147 L.Ed.2d 787 (1998), and "should not be a broad highway into the federal courts[,]" *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984). Thus, "a trial court has broad discretion in denying an application to proceed *in forma pauperis* under 28 U.S.C.A. § 1915, [but] must not act arbitrarily and it may not deny the application on erroneous grounds." *Pace v. Evans*, 709 F.2d 1428, 1429 (11th Cir. 1983), citing *Flowers v. Turbine Support Division*, 507 F.2d 1242, 1244 (5th Cir. 1975); *see also Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 & 1306-1307 (11th Cir. 2004) ("[A] trial court has wide discretion in denying an application to proceed IFP under 28 U.S.C. § 1915. . . . However, in denying such applications a court must not act arbitrarily. Nor may it deny the application on erroneous grounds.").

"In order to authorize a litigant to proceed in forma pauperis, the court must make two determinations: first, whether the litigant is unable to pay the costs of commencing this action; and second, whether the action is frivolous or malicious." *Boubonis v. Chater*, 957 F.Supp. 1071, 1072 (E.D. Wis. 1997), citing 28 U.S.C. § 1915(a) & (e)(2)(B)(i). "While one need not be absolutely destitute to qualify for *in forma pauperis* status, such benefit

is allowed only when a movant cannot give such costs and remain able to provide for herself and her dependents." *Mitchell v. Champs Sports*, 42 F.Supp.2d 642, 648 (E.D. Tex. 1998) (citations omitted). "The question under 28 U.S.C. § 1915 is whether the litigant is 'unable to pay' the costs, and the answer has consistently depended in part on [the] litigant's actual ability to get funds from a spouse, a parent, an adult sibling, or other next friend." *Williams v. Spencer*, 455 F.Supp. 205, 209 (D.Md. 1978); *see Fridman v. City of New York*, 195 F.Supp.2d 534, 537 (S.D.N.Y. 2002) ("In assessing an application to proceed in forma pauperis, a court may consider the resources that the applicant has or 'can get' from those who ordinarily provide the applicant with the 'necessities of life,' such as 'from a spouse, parent, adult sibling or other next friend.' . . . If it appears that an applicant's 'access to [] court has not been blocked by his financial condition; rather [that] he is "merely in the position of having to weigh the financial constraints imposed if he pursues [his position] against the merits of his case,"' then a court properly exercises its discretion to deny the application."). In *Martinez, supra*, the Eleventh Circuit determined that affidavit statements satisfying the requirement of poverty should be accepted by the trial court "absent a serious misrepresentation, and need not show that the litigant is 'absolutely destitute' to qualify for indigent status under § 1915." 364 F.3d at 1307 (citation omitted); *see also id*. ("Such an affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents.").

Upon a review of the Plaintiff's "new" IFP motion filed on March 11, 2019 (Doc. 6), the undersigned **RECOMMENDS** that the Court exercise its broad discretion to **DENY** the motion. The undersigned would note that the question is not whether Plaintiff knows

4

"anyone willing to help with expenses and legal matters" at this time (Doc. 6, at 3); instead, the question for this Court is whether Plaintiff lives with a family member(s) or other next friend who is able to pay the filing fee and other related costs without being deprived of the basic necessities of life. *See Martinez, supra,* 364 F.3d at 1307; *compare id. with, e.g., Williams, supra,* 455 F.Supp. at 209 (under § 1915, the answer to whether a litigant is unable to pay depends "in part on [the] litigant's actual ability to get funds from a spouse, a parent, an adult sibling, or other next friend" (emphasis added)) and *Fridman, supra,* 195 F.Supp.2d at 537 ("In assessing an application to proceed in forma pauperis, a court may consider the resources that the applicant has or 'can get' from those who ordinarily provide the applicant with the 'necessities of life,' such as 'from a spouse, parent, adult sibling or other next friend.'" (emphasis added)). And it is apparent to the undersigned that Plaintiff, instead of admitting that he lives with a family member or other next friend who can (or cannot) pay the filing fee and related costs for him, is trying to "hoodwink" this Court into granting him IFP status based upon the minimal monthly "SSI" income he receives. That Peeples lives with a family member or other next friend is clear based on an internet search of his residence—7403 Saybrook Blvd., Mobile, Alabama 36619—establishing that the value of the (6-bedroom, 3.5 bath) single-family house is $349,377.00, with a rent "Zestimate" of $1,750/month and an estimated refinance payment of $1,366.00/month. *See* [https://www.zillow.com/homedetails/7403-Saybrook-Blvd-Mobile](https://www.zillow.com/homedetails/7403-Saybrook-Blvd-Mobile) (last visited, April 3, 2019, at 4:20 p.m.). Therefore, in absence of the assistance of family members or other next friends (and living with family members or other next friends), Plaintiff would certainly not be living in a 6-bedroom, 3.5 bath house worth just shy of $350,000 and paying monthly rent between $600 and $800 a month

(while receiving only $771.00 monthly and accruing no financial debts or obligations), as such rent would not "cover" the reasonable monthly rent or mortgage on this residence. Accordingly, the undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's "new" IFP motion (Doc. 6) based upon the inconsistent and questionable information set forth in that document.[1]

## II. PLAINTIFF'S AMENDED COMPLAINT (Doc. 5).

By previous order entered on February 22, 2019, the undersigned also identified various deficiencies in Plaintiff's original complaint that he needed to remedy in an amended complaint. (Doc. 4, at 1-2; *compare id. with* 1 (complaint)).[2] In particular, the undersigned explained to Plaintiff that his complaint, filed on February 19, 2019, did not contain a statement of the grounds for the Court's jurisdiction, as required by Fed.R.Civ.P. 8(a)(1) (Doc. 4, at 1), explained the three different types of subject-matter

---

[1] That the minimal information Peeples has set forth in his "new" IFP motion is questionable (to say the least) is clear based upon a review of the IFP form he recently submitted in another civil case filed in this Court. *See Peeples v. Alabama Power Co.,* Civil Action No. 18-0525-TFM-MU, Doc. 3 (IFP form filed December 12, 2018 indicating that Peeples is a Captain in the Marine Corps employed by Navy Personnel Command in Tennessee, Maryland, and Massachusetts but has not yet received any "pay" and also indicating that his obligations include monthly rental on a house of $1,400.00 to $1,500.00, as well as assistance to a daughter totaling $100 to $300 monthly, and that he "gets by" on food stamps, **family assistance**, and charitable contributions).

[2] Since Plaintiff has already been extended the opportunity to file an amended complaint to correct the deficiencies in his original pleading (Doc. 4) and has now filed an amended complaint (Doc. 5), he need be given no further opportunity to amend his complaint before ruling on whether he has established a basis for this Court's exercise of jurisdiction and/or whether his complaint can be dismissed for failure to state a claim. *Compare, e.g., Butler v. Morgan,* 562 Fed.Appx. 832, 835 (11th Cir. Apr. 3, 2014) ("A district court must grant a plaintiff at least one opportunity to amend his complaint before dismissal if 'it appears a more carefully drafted complaint might state a claim upon which relief can be granted,' even if the plaintiff never seeks leave to amend.") *with Vaughn v. Postal Employees,* 2014 WL 3540575, *3 (S.D. Ala. July 17, 2014) ("Plaintiff was given an opportunity to correct these deficiencies and was specifically instructed to provide additional facts in his amended complaint regarding the basis for his claims and for the Court's jurisdiction.").

jurisdiction that a federal district court may exercise (Doc. 4, at 2 n. 2), and informed Peeples that he was required to "'affirmatively allege facts demonstrating the existence of jurisdiction.'" (*Id.,* quoting *Cornelius v. U.S. Bank Nat'l Ass'n,* 452 Fed.Appx. 863, 865 (11th Cir. Nov. 29, 2011), in turn quoting *Taylor v. Appleton,* 30 F.3d 1365, 1367 (11th Cir. 1994)). In addition, the February 22, 2019 Order further explained to Peeples that his original complaint did not contained a short and plain statement of the claim showing he was entitled to relief, as required by Fed.R.Civ.P. 8(a)(2), as the Court was unsure whether he was asserting a claim for breach of contract, a copyright infringement claim, or both. (Doc. 4, at 2.) As a result, Peeples was instructed to "identify all relevant facts in support of his claim or claims in separately-numbered paragraphs and also specifically (and separately) identify the claim or claims asserted against Xlibris and his right to exercise each identified claim (and his right to recovery as to each claim) based on the relevant facts." (*Id.* (footnotes omitted)).

Plaintiff's amended complaint filed March 11, 2019 (Doc. 5), the operative pleading in this case (*see* Doc. 4, at 2-3), contains the following jurisdictional statement: "This court has jurisdiction under the federal statutes that cover copyright laws and parties being located in separate states. The address for Xlibris, the defendant, is located at 1663 Liberty Dr., Bloomington, Indiana 47403 and the plaintiff's address is at 7403 Saybrook Blvd., Mobile, AL 36619. It also has subject matter jurisdiction by it involving copyright law." (Doc. 5, at 1.) Plaintiff claims in his amended complaint that the Defendant breached three separate contracts—a distribution contract, a marketing contract, and several settlement contracts—and, as well, that the Defendant's actions in selling (and/or distributing) his copyrighted book, <u>Falling Angels of America</u>, after the

distribution agreement (between Peeples and Xlibris) was terminated, amounts to copyright infringement. (*See* Doc. 5, at 1-2.)

**A.     <u>Diversity Jurisdiction</u>**.

By asserting that this Court has jurisdiction over this matter by virtue of the parties "being located in separate states[,]" (Doc. 5, at 1), it is clear that Plaintiff is invoking this Court's diversity jurisdiction in accordance with 28 U.S.C. § 1332(a). "Jurisdiction under 28 U.S.C. § 1332 based on the parties' diversity of citizenship 'requires complete diversity—every plaintiff must be diverse from every defendant.'" *Cornelius v. U.S. Bank Nat'l Ass'n,* 452 Fed.Appx. 863, 865 (11th Cir. Nov. 29, 2011), quoting *Palmer v. Hospital Authority of Randolph County,* 22 F.3d 1559, 1564 (11th Cir. 1994); *see also Lincoln Property Co. v. Roche,* 546 U.S. 81, 89, 126 S.Ct. 606, 613, 163 L.Ed.2d 415 (2005) ("Since *Strawbridge v. Curtiss,* 3 Cranch 267, 2 L.Ed. 435 (1806), we have read the statutory formulation 'between . . . citizens of different States' to require complete diversity between all plaintiffs and all defendants."). In addition, it need be understood that "[f]or well over a century, federal law has drawn a sharp distinction between corporations and virtually every other form of association for purposes of determining diversity of citizenship." *Underwriters at Lloyd's, London v. Osting-Schwinn,* 613 F.3d 1079, 1086 (11th Cir. 2010).

> On the one hand, corporations are considered legal persons whose citizenship does not depend on that of their shareholders, a rule that extends back at least to the case of *Louisville, Cincinnati, and Charleston Railroad Co. v. Letson,* 43 U.S. (2 How.) 497, 557-58, 11 L.Ed. 353 (1844). *See also MacGinnitie v. Hobbs Group, LLC,* 420 F.3d 1234, 1239 (11th Cir. 2005). On the other hand, unincorporated associations do not themselves have any citizenship, but instead must prove the citizenship of each of their members to meet the jurisdictional requirements of 28 U.S.C. § 1332. Furthermore, no matter the particular features of an unincorporated entity, it has long been "[t]he tradition of the common law . . . to treat as legal

persons only incorporated groups and to assimilate all others to partnerships," which must plead the citizenship of each member. *Puerto Rico v. Russell & Co.,* 288 U.S. 476, 480, 53 S.Ct. 447, 77 L.Ed. 903 (1933).

*Id.* Stated somewhat differently, while a "corporation is a citizen of (1) its state of incorporation[] and (2) the state where it has its principal place of business[,]" *Lewis v. Seneff,* 2008 WL 3200273, *2 (M.D. Fla. Aug. 5, 2008), citing 28 U.S.C. § 1332(c)(1), "an unincorporated entity such as a **limited liability company**" is a citizen "of every state in which each of [its] members are citizens." *Id.* (citations omitted; emphasis supplied); *see also Americold Realty Trust v. Conagra Foods, Inc.,* 136 S.Ct. 1012, 1015, 194 L.Ed.2d 71 (2016) ("Congress never expanded this grant of citizenship [set forth in § 1332(c)] to include artificial entities other than corporations, such as joint-stock companies or limited partnerships. For these unincorporated entities, we too have 'adhere[d] to our oft repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of "all [its] members."'" (citations omitted)).

Here, Peeples' amended complaint contains the bare assertions that the address for Xlibris Publishing is in Bloomington, Indiana, while his address is in Mobile, Alabama. The bare allegation respecting the Defendant is insufficient as it does not identify whether Xlibris is a corporation or, instead, an unincorporated entity such as a limited liability corporation. Moreover, if Xlibris is a corporation, the complaint does not delineate its state(s) of incorporation and the state where it has its principal place of business. *See Flintlock Constr. Servs., LLC v. Well-Come Holdings, LLC,* 710 F.3d 1221, 1224 (11th Cir. 2013) ("A corporation is considered a citizen of every state in which it has been incorporated and where it has its principal place of business."). And,

if an unincorporated entity such as a limited liability corporation,[3] the amended complaint does not allege every state in which each of its members are citizens. *See, e.g., Lewis v. Seneff, supra,* at *3 (Without the information concerning the citizenship of each limited liability company's membership, Plaintiffs have not shown that this Court has subject matter jurisdiction."). Accordingly, the undersigned **RECOMMENDS** that the Court find that Plaintiff has not set forth facts supporting the existence of diversity jurisdiction at the time of the filing of the amended complaint on March 11, 2019.

**B.     Copyright Infringement.**

Plaintiff alternatively recites federal jurisdiction based on his claim of copyright infringement (*see* Doc. 1, at 5), and there can be little question but that "[f]ederal district courts have subject-matter jurisdiction over copyright infringement actions based on 28 U.S.C. §§ 1331 and 1338." *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 164-65, 130 S.Ct. 1237, 1246, 176 L.Ed.2d 18 (2010). Accordingly, the undersigned reads Plaintiff's amended complaint liberally to invoke subject-matter jurisdiction based on 28 U.S.C. §§ 1331 and 1338. However, the existence of subject-matter jurisdiction with respect to Plaintiff's copyright infringement claim does not end the Court's inquiry under 28 U.S.C. § 1915(e)(2)(B)(ii).

"'Registration' of a copyright is a precondition to filing suit for copyright infringement." *Fourth Estate Public Benefit Corp. v. Wall-Street.Com, LLC,* 856 F.3d 1338, 1339 (11th Cir. 2017) (citing 17 U.S.C. § 411(a)), *judgment aff'd,* 139 S.Ct. 881

---

[3]     It appears to the undersigned that Xlibris Publishing is a limited liability corporation. *See* www.xlibris.com (last visited, April 4, 2019, at 3:30 p.m.) (Xlibris website shows that it is an LLC).

(Continued)

(March 4, 2019)[4]; *see also* 856 F.3d at 1340 ("Although registration is voluntary under the Copyright Act, Congress created several incentives for a copyright owner to register his copyright, *Kernel Records Oy v. Mosley,* 694 F.3d 1294, 1301 (11th Cir. 2012), one of which is the right to enforce a copyright in an infringement action[.]"); 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights."). And, indeed, the Eleventh Circuit has specifically determined that "[r]egistration of a copyright has not been made in accordance with . . . 17 U.S.C. § 411(a)[] until the Register registers the claim[.]" *Fourth Estate Public Benefit Corp., supra,* 856 F.3d at 1341 (quotation marks, brackets and ellipses omitted); *see also id.* ("Filing an application does not amount to registration.").

> The Copyright Act defines registration as a process that requires action by both the copyright owner and the Copyright Office. A copyright owner must first deposit a copy of the material with the Copyright Office, file an application, and pay a fee. The Register of Copyright then examines the material and determines whether "the material deposited constitutes copyrightable subject matter." If the material is copyrightable "the Register shall register the claim and issue to the applicant a certificate of registration." If "the material deposited does not constitute copyrightable

---

[4] In affirming the Eleventh Circuit's judgment in *Fourth Estate Public Benefit Corp.,* the United States Supreme Court held in accordance with the appellate court that "registration occurs, and a copyright claimant may commence an infringement suit, when the Copyright Office registers a copyright." 139 S.Ct. at 886; *see also id.* at 892 ("[W]e conclude that 'registration . . . has been made' within the meaning of 17 U.S.C. § 441(a) not when an application for registration is filed, but when the Register has registered a copyright after examining a properly filed application.").

11

> subject matter . . ., the Register shall refuse registration and shall notify the applicant in writing of the reasons for such refusal."

*Id.* (internal citations omitted).

Here, Peeples' amended complaint (Doc. 5) contains no allegations that he registered his book Falling Angels of America with the Copyright Office (or was refused such registration), which, as aforesaid, is a prerequisite/precondition to bringing an action for copyright infringement. *Compare Fourth Estate Public Benefit Corp., supra,* 856 F.3d at 1339-1341 *with Kernel Records Oy v. Mosley,* 694 F.3d 1294, 1301 (11th Cir. 2012), *cert. denied,* 569 U.S. 919, 133 S.Ct. 1810, 185 l.Ed.2d 812 (2013). In the absence of any allegations that Peeples registered his book with the Copyright Office (or was refused such registration), Plaintiff has not established his ability to initiate a civil action for copyright infringement, as he has failed to plead compliance with the registration requirement set forth in 17 U.S.C. § 411(a);[5] therefore, Peeples has failed to state a claim upon which relief may be granted and this portion of his complaint is due to be dismissed without prejudice in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii).

## **CONCLUSION**

Based upon the foregoing, it is **RECOMMENDED** that the Court **DENY** Plaintiff's amended motion to proceed without prepayment of fees (Doc. 6) and it is further recommended that this action be **DISMISSED WITHOUT PREJUDICE**, prior to service of process, both because Plaintiff has failed to establish that diversity jurisdiction exists and because he has failed to state a claim for copyright infringement, *see* 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[5] In other words, Peeples has not alleged infringement of any registered work.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 8th day of April, 2019.

s/William E. Cassady
**UNITED STATES MAGISTRATE JUDGE**